ASHLEY et al. v. WEEKS-NUMAN CO.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 117.

1. PATENTS ⊂⇒15—DESIGNS—SUBJECT-MATTER.
   Appearance is the subject-matter of a design patent, and that is none the less patentable because a mechanical function is involved.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 13; Dec. Dig. ⊂⇒15.]

2. PATENTS ⊂⇒28—DESIGNS—NEW ASSEMBLING OF OLD ELEMENTS.
   The fact that each separate element in a patented design was old does not negative invention, which may reside in the manner in which they are assembled.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 33; Dec. Dig. ⊂⇒28.]

3. PATENTS ⊂⇒328—VALIDITY AND INFRINGEMENT—DESIGN FOR INKSTAND.
   The Ashley design patent, No. 42,077, for a design for an inkstand, *held* not anticipated, valid, and infringed.

4. PATENTS ⊂⇒252—INFRINGEMENT—PATENT FOR DESIGN.
   Infringement of a design patent is not to be determined by a close comparison of the two articles; but the test is whether the ordinary observer would purchase one, believing it to be the other.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 394-396; Dec. Dig. ⊂⇒252.]

5. PATENTS ⊂⇒252—DESIGNS—SCOPE.
   A patentee, having a design patent with a written specification relating to an entirely new form of article, is entitled, not only to the exact design shown in his drawing, but also to protection against the making and marketing of articles which contain the dominant features of the design described in the specification.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 394-396; Dec. Dig. ⊂⇒252.]

6. PATENTS ⊂⇒222—DAMAGES FOR INFRINGEMENT—FAILURE TO MARK ARTICLE.
   The owner of a patent, who has not marked the thing patented as required by statute, cannot recover damages for infringement, except on proof that defendant was duly notified of the infringement and continued it after notice.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 352; Dec. Dig. ⊂⇒222.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on appeal from a decree entered in the District Court of the United States for the Southern District of New York on April 17, 1914, sustaining design letters patent No. 42,077, granted January 9, 1912, to Frank M. Ashley for a design for an inkstand, finding that defendant had infringed said patent and awarding an injunction and an accounting, with costs.

On January 10, 1912, Frank M. Ashley granted, for an agreed royalty, to the Cushman & Denison Manufacturing Company, one of the complainants, the exclusive right and license to manufacture and sell throughout the entire United States and the territories thereof, during the full term of said letters patent, inkstands made in accordance with said design letters patent.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frank M. Ashley is, and ever since the issue of the patent has been, the owner of the patent in suit.

The complainants allege that the defendant is, within the county and state of New York, and without license from complainants, unlawfully engaged in making, constructing, using, or vending to others to be used, inkstands made according to the said design letters patent. The defendant denies the validity of the patent and infringement.

Charles C. Gill, of New York City, for appellant.

Albert T. Scharps, of New York City, for appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The patent in suit in the specification states that the essence of the invention resides in the general form and relative proportions of the base and cover which presents to the eye an appearance of a low, comparatively wide construction, having a very neat and artistic effect. The claim is for "the ornamental design for an inkstand as shown and described."

The drawing as explained in the specification is as follows:

"A indicates the body portion of the inkstand containing the reservoir for the ink. This body portion is of rectangular form and having a greater length than width and a considerably less height than width. A thin cover B is provided, which is of less length than body portion A, and is disposed adjacent one edge of the body, so as to expose a portion of the top of the body portion when the cover is in a position to close the reservoir. Raised curved portions B' may be provided on the cover forming recesses C—C to serve as a pen rack."

The defendant's patent is design patent No. 41,846, issued on October, 17, 1911. It contains no written description of the invention, but merely states that reference is had to the accompanying drawing, in which is presented a perspective view of an inkstand embodying his design. His claim is for "the ornamental design for an inkstand as shown." The accompanying drawing, which forms a part of the specification, is here reproduced:

The specifications for the above patent are simply a reference to the drawing of the patent showing the inkstand in perspective.

The first question to be considered is as to the validity of the Ashley patent. The defendant denies its validity on several grounds:

1. That it does not constitute a new, original, and ornamental design, as required by law, as the proper subject for a design patent, but is for a mechanical function and apparatus, which, if patentable at all, should have been patented

by a mechanical patent, or by a patent for a machine or apparatus, as distinguished from a patent for an ornamental design.

2. That in view of the state of the art at and prior to the time of the alleged invention the subject-matter of the patent is not legally patentable matter, invention, or discovery.

[1] As respects the first objection, defendant calls attention to the fact that the exposure of the rear portion of the top of the body portion, when the cover of complainant's inkstand is in closed position, involves purely mechanical function. In the complainants' construction, if the rear portion of the base were not exposed when the cover is in closed position, the cover would extend beyond the base when in open position, and this result the patentee did not wish to take place, and therefore made the cover so that it does not reach quite back to the rear edge of the base when in its open position. Defendant argues that the exposed portion of the top of the base, when the cover is in closed position, does not and obviously could not form any part of an ornamental or artistic design. The flat surface is merely a flat support for the rear portion of the cover when the cover is in open position.

In reply to this contention of counsel we declare that the subject-matter of a patent is not rendered unfit as a design patent by the mere fact that it is possible somewhere in its construction to discover a mechanical function. A patentable design may consist of a new and ornamental shape given to an article of manufacture or of an ornamentation to be placed upon an article of old shape. The design law was intended to encourage the decorative arts, and therefore deals with the appearance, rather than the structure, uses, or functions, of the article. 30 Cyc. 827. In a design patent the appearance is the subject-matter of the patent, and the appearance is none the less patentable because a mechanical function is involved. The patentability of a design is determined by its appeal to the eyes, and not by the presence or absence of a mechanical function.

[2] As respects the second objection, the defendant in its answer sets up 22 patents prior in date to the patent in suit, which it claims fully and clearly show and describe the invention or design of that patent, and have substantially the same arrangement, aggregation, or combination of parts, and produce the same function and effect. But the court below stated that:

"There is nothing in the prior art which approaches at all near to the patent, even if it be given the widest scope which words permit."

We shall not enter into a detailed comparison of the patent in suit with the prior patents, but content ourselves with saying that we fully concur with the court below in its opinion that there is nothing in the prior art which impairs the validity of the Ashley patent. It is apparent that "the general form and relative proportions of the base and cover, which present to the eye an appearance of a low comparatively wide, construction," were new; nothing like them being disclosed in the prior patents. It may be that sliding covers were old, and that low, broad flat bases were not new, and yet the design of an inkstand having these elements may not be wanting in invention.

"The principle, as applied to design patents, is unassailable that whenever ingenuity is displayed in producing something new, which imparts to the eye

a pleasing impression, even though it be the result of uniting old forms and parts, such production is a meritorious invention and entitled to protection." General Gaslight Co. v. Matchless Mfg. Co. (C. C.) 129 Fed. 137; Graff v. Webster, 195 Fed. 522, 115 C. C. A. 432.

This court has before said, and now repeats, that the fact that each separate element in a patented design was old does not negative invention, which may reside in the manner in which they are assembled, since it is the design as a whole, and the impression it makes on the eye, which must be considered.

[3, 4] As we have reached the conclusion that the patent in suit is valid, we are brought to inquire whether the defendant infringes. The appellant states the question of infringement is ordinarily to be determined by a mere inspection of the complainant's and defendant's stands, and that the impression of substantial identity of appearance must exist, if infringement is to be found. In this the appellant is in error. It is not a proper test to place the two inkstands side by side, to determine whether or not there are certain differences. On the contrary, the correct test is whether the ordinary observer, giving such attention as a purchaser usually gives, would purchase the defendant's inkstand believing it to be that of complainants'; and in applying that test it is necessary to observe that the subject-matter relates to form and configuration of which no one had ever seen the like prior to the patent in suit.

In Gorham v. White, 14 Wall. 511, 20 L. Ed. 731, the Supreme Court laid down the rule as follows:

"The purpose of the law must be effected, if possible; but plainly it cannot be if, while the general appearance of the design is preserved, minor differences of detail in the manner in which the appearance is produced, observable by experts, but not noticed by ordinary observers, by those who buy and use, are sufficient to relieve an imitating design from condemnation as an infringement. We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one, supposing it to be the other, the first one patented is infringed by the other."

Tested by this rule the defendant infringes. It is true that there are some differences between the design of the complainants and the design of the defendant. But the differences are differences of detail and not of substance. The defendant has not made a Chinese copy of the complainants' inkstand, and yet it imparts to the mind the same general appearance, which would deceive an ordinary observer into buying one inkstand believing it to be the other. Both inkstands have: (1) A rectangular base; (2) a base of greater length than width; (3) a base of less height than width; (4) a thin cover; (5) a pen rack; (6) the cover adjacent the front edge; (7) the cover having a length less than that of stand, thereby leaving a portion of the base exposed when the stand is closed; (8) a recess or pin tray on the cover.

It is true that the exact dimensions found in the base in the complainants' inkstand are not found in the defendant's inkstand. It is also true that the exact configuration of the cover in the complainants' inkstand is not present in the inkstand of the defendant. It is also true that defendant makes its inkstand with a black composition cover only,

while the complainants make theirs both with a glass and a black composition cover; and it is true that defendant makes a circular pin tray instead of a rectangular one, and forms its pen rack by a groove in the cover, as distinguished from the pen rack formed by the raised portions of the complainants' inkstand.

We do not think, however, that the complainants' claim is to be restricted to a cover with a round pin tray, instead of an oblong one, or to one with racks for one pen, instead of two; and so far as any difference exists in the material used in the covers, it is to be observed that the general rule is, subject, it may be, to possible exceptions, that a design is independent of the material of which the article of manufacture is composed. The other trifling differences which exist between the two patents and to which we have called attention cannot suffice to relieve defendant from the charge of infringement. There is nothing in these minor differences which rises to the dignity of invention. The essence of the complainants' patent, as already indicated, consists in the form and configuration, and the relative proportions of parts in the defendant's inkstand so nearly resemble that of the complainants' that an ordinary buyer, having seen the latter, would be very likely to mistake the defendant's inkstand for it, when seen in a similar environment.

[5] In Dobson v. Dornan, 118 U. S. 10, 6 Sup. Ct. 946, 30 L. Ed. 63, the Supreme Court held that a design patent is not void because of its failure to contain a written description; and in Ashley v. Tatum, 186 Fed. 339, 108 C. C. A. 539 (1911), which was a design patent for an inkstand, and which was without any written description, we held that, in the absence of a written specification, the patentee is limited to substantially the precise article shown in the drawing of the patent. But in the case of the patent in suit there is no absence of a written specification, and the patentee is not limited to the precise article shown in the drawing. We therefore have felt justified in construing the patent in suit in the manner above stated. The patentee having a patent with written specifications relating to an entirely new form of inkstand, he is entitled, not only to the exact design shown in his drawing of the patent, but also to the protection of the court against the making and marketing of inkstands which contain the dominant features of the design described in the specification.

The application for complainant's patent was filed September 28, 1909. The application for defendant's patent was filed November 5, 1910, and defendant's patent was not granted until October 17, 1911, and complainants' patent was not granted until January 9, 1912. The two applications were copending in the Patent Office at the same time. But the failure of the Patent Office to declare an interference between copending applications is of little, if any, evidential force on the question whether the device of one is an infringement of the other. Herman v. Youngstown Car Mfg. Co., 191 Fed. 579, 584, 585, 112 C. C. A. 185 (1911). It is well understood that the Patent Office is not particularly concerned with the question of infringement.

[6] This brings us to consider the relief to which the complainant is entitled. The court below awarded a perpetual injunction. It also di-

rected that plaintiffs recover of defendant the profits, gains and advantages which defendant has derived, received, and made since the date of the issue of complainants' patent. The defendant, however, alleges that, as the complainants have not complied with section 4900 of the United States Revised Statutes (U. S. Comp. St. 1913, § 9446), they are not entitled to an accounting, nor to the penalty of $250 imposed by the statute. The provision referred to reads as follows:

"It shall be the duty of all patentees and their assigns and legal representatives, and of all persons making or vending any patented article for or under them to give sufficient notice to the public, that the same is patented; either by fixing thereon the word 'patented' together with the day and year the patent was granted; or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is inclosed, a label containing the like notice; and in any suit of infringement, by the party failing so to mark, no damages shall be recovered by the plaintiff, except on proof that the defendant was duly notified of the infringement, and continued, after such notice, to make, use or vend the article so patented."

And chapter 105 of the act of February 4, 1887 (24 Stat. 387 [U. S. Comp. St. 1913, §§ 9476, 9477]) provides that it is unlawful for any person other than the owner of the patent, without the license of the owner, to apply the design secured by the patent, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, etc., "knowing that the same have been so applied." It then provides that any person violating the provisions of the section shall be liable in the amount of $250. It appears from the evidence that complainant, pending the action of the Patent Office, marked his inkstand "Patent applied for." This marking was not in strict accordance with the language of section 4900 of the Revised Statutes.

The meaning of the statute is clear. A patentee or the assignee, who has not complied with the statute by marking the thing patented as the statute requires, cannot recover damages, except on proof that the defendant was duly notified of the infringement, and continued, after such notice, to make, use, or vend the article so patented. Dunlap v. Schofield, 152 U. S. 244, 247, 14 Sup. Ct. 576, 38 L. Ed. 426 (1894). There is no evidence which shows or tends to show actual or constructive notice to defendant prior to the filing of the bill of complaint. But the filing of the bill affords notice to defendant of the complainants' rights under the patent in suit, and the complainants are therefore entitled only to damages subsequent to the filing of the bill of complaint. If there has been no infringement since the bill was filed, then there are no damages to be recovered. The complainant is entitled as a matter of course to any profits, gains, and advantages which the defendant has derived, received, and made since the date of the issue of the complainants' design patent No. 42,077 by reason of its infringement.

In what has been said thus far in this opinion concerning the defendant's infringing inkstand, we have had under consideration defendant's design patent No. 41,846, the drawing of which appeared at the beginning of the opinion. So far as defendant's design patent No. 43,321 is concerned, not much need be said. The specification for the patent is, as we have seen was the case with the defendant's first patent, simply a

reference to the drawings showing the inkstand in perspective. The drawing showing a top view of the inkstand is here reproduced:

It is a double inkstand, and will not be mistaken for the patent in suit, which is a single inkstand. It is evident that design patent No. 43,321 does not infringe design patent No. 42,077.

We think that the decree of the court below should be affirmed, in so far as it holds that complainants' design patent No. 42,077 is valid and has been infringed by defendant, and that a perpetual injunction should issue, and that plaintiffs recover the profits, gains, and advantages which the defendant has derived, received, and made since the date of the issue of the aforesaid design patent No. 42,077 by reason of its infringement. But the decree should be modified, so as to restrict the damages which the plaintiffs recover to the time subsequent to the filing of the bill.

It is so ordered.