## HODGSON v. VROOM.

(Circuit Court of Appeals, Second Circuit.   May 12, 1920.)

No. 237.

1. **Copyrights** ⊙⟹89—**Review of temporary injunction by Circuit Court of Appeals not limited by prior decision of lower court.**

   The power of the Circuit Court of Appeals to consider the merits, on appeal from order of District Court denying temporary injunction in suit to enjoin production of a play as being an infringement of plaintiff's copyright, is not hampered by the fact that another District Court, in a prior suit by plaintiff against another for the same purpose and on the same ground, had rendered decree for plaintiff.

2. **Equity** ⊙⟹416—**Decree held a "consent decree."**

   A decree in a prior suit to enjoin production of a play on the ground of it being an infringement of a copyright held a "consent decree"; that is, one entered on consent of the parties as to what the decision should be, constituting a mere agreement of the parties under sanction of the court.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Consent Decree.]

3. **Equity** ⊙⟹416—**Nonappealability incident and indicia of consent decree.**

   Nonappealability is not only an incident to a consent judgment, but one of the indicia of the nature of the decree entered.

4. **Copyrights** ⊙⟹89—**No duty in injunction suit to conform to consent decree of another district.**

   There is no duty on the court, in suit to enjoin production of a play as an infringement of plaintiff's copyright, to conform to the decree in a prior suit in another district involving the same copyright and play, but against a different defendant, where such decree was a consent decree.

Appeal from the District Court of the United States for the Southern District of New York.

Action by Ruby L. Hodgson against Edward Vroom.   From an order denying application for injunction pendente lite, plaintiff appeals. Affirmed.

Plaintiff is the (remarried) widow of one Samuel E. Gross, and by virtue of his last will and testament is the owner of a certain copyrighted play entitled "The Merchant Prince of Cornville."   Mr. Gross was a resident of Chicago, and while engaged in a business described as "operating in real estate" he wrote and completed by 1879 the play in question.   In the year 1900 one Palmer and the late Richard Mansfield were producing upon the stage in Chicago Edmond Rostand's play of "Cyrano de Bergerac," whereupon Gross sued Palmer, Mansfield, and others in the United States Circuit Court for the Northern District of Illinois, seeking to enjoin them from performing or publicly representing said "Cyrano de Bergerac," upon the ground that this play constituted an infringement of the copyright of "The Merchant Prince of Cornville."

Pursuant to the practice then obtaining in equity, testimony was taken before a master in chancery, who on May 19, 1902, reported that in his opinion it was "impossible to avoid the conclusion that the melodrama of 'Cyrano de Bergerac' performed by defendant Mansfield is a clear and unmistakable piracy of [Gross'] play, 'The Merchant Prince of Cornville.'"   Wherefore he reported as matter of law that Mr. Gross was "entitled to a decree enjoining and restraining defendants * * * from producing, exhibiting, or presenting * * * 'Cyrano de Bergerac' on any stage or in any theater or in any manner in the United States, and also to an accounting of profits, and also to such other and further relief as equity may require."

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Two days later, and on May 21, 1902, this report was brought before the District Judge for the Northern District of Illinois, and a decree was entered which recites that "no objections [had been] filed to" the master's report; "whereupon," continues the decree, "said defendants appearing in open court by counsel and consenting to the entry hereof, it is ordered that the report of E. B. Sherman, Esq., master in chancery, * * * [be] in all respects approved and confirmed, and that the defendants * * * hereby are perpetually enjoined and restrained from publicly representing or performing * * * 'Cyrano de Bergerac,' * * * or any play substantially identical therewith, or any play including or containing the balcony scene of 'Cyrano de Bergerac,' or any scene substantially identical therewith; * * * and it is further ordered that complainant is entitled to an accounting of the profits realized by the said defendants through the presentation * * * of 'Cyrano de Bergerac,' but said complainant electing to waive said accounting of profits and accept the sum of one dollar in lieu thereof, it is further ordered that complainant do have and recover from the said defendants the said sum of one dollar, together with the costs of this suit."

The plaintiff in this action, having learned that the defendant Vroom contemplated the production of "Cyrano de Bergerac" in the city of New York, brought this suit to prevent such production, alleging in substance that Rostand's play is an infringement of the copyright of "The Merchant Prince of Cornville," in that Cyrano "consists largely of a piracy upon 'The Merchant Prince of Cornville' in plot, arrangement, situation, characters, ideas, and language." The District Judge refused plaintiff's application for an injunction pendente lite, whereupon plaintiff took this appeal.

Harry D. Nims, of New York City, for appellant.
Stephen H. Philbin, of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The single question of law presented by this appeal is whether the District Court, or this court, or both, is bound by the decree entered in Chicago in 1902 to grant preliminary relief; it is not asserted that the decree against Mansfield and Palmer is res adjudicata as against this present defendant.

The matter might be disposed of by pointing out that, whatever may be the effect of the Chicago decree so far as the District Court is concerned, it does not in the least hamper the power of this court. Cf. Victor, etc., Co. v. Starr, etc., Co. (C. C. A.) 263 Fed. 82; Thomson-Houston, etc., Co. v. Hoosick, etc., Co., 82 Fed. 462, 27 C. C. A. 419; Baldwin v. Abercrombie, etc., Co., 228 Fed. 897, 143 C. C. A. 293. The question as to what the District Court should do (not what it could do) under circumstances like the present depends upon the inquiry whether the Chicago decree of 1902 was or was not a "consent decree."

[2, 3] The nature of consent decrees and something of their history are learnedly set forth by Hammond, J., in Kelly v. Milan (C. C.) 21 Fed. 862 et seq. (the affirmance of this case in 127 U. S. 139, 8 Sup. Ct. 1101, 32 L. Ed. 97, does not touch this point). The distinction between a decree in common form and a consent decree is the difference between a consent to submit a case to the court for decision and a consent as to what the decision shall be. When there is a consent as to what the decision shall be, the decree is a "mere agree-

ment of the parties under the sanction of the court, and is to be interpreted as an agreement."

A decree on consent is not appealable, in the sense that no errors will be considered which were in law waived by the consent given. United States v. Babbitt, 104 U. S. 767, 26 L. Ed. 921. Therefore nonappealability is not only an incident to a consent judgment, but one of the indicia of the nature of the decree entered.

Tested by these rules, the decree in Gross v. Mansfield was plainly a consent decree upon its face. The moving papers before us contain a good deal of information or suggestion as to why the Chicago litigation ended in an agreement of parties, after a rather lengthy and probably expensive proceeding before the master in chancery; but we need not consider these matters. The record—i. e., the decree as entered—speaks for itself.

[4] It is quite true, as urged by appellant, that there is close analogy between actions under the patent laws and suits upon copyright (Scribner v. Straus [C. C.] 130 Fed. 389), and great stress is laid upon that long line of decisions holding that decrees in patent causes are entitled to great weight, when subsequent action is brought on the same patent against other alleged infringers. But this proper rule is one of comity, which may persuade, but cannot compel. Mast, etc., Co. v. Stover, etc., Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856. There is great power of persuasion in a procession of consent decrees, as evidencing public acquiescence in the plaintiff's asserted right; but there is no legal compulsion in any consent decree, because the judicial action is no more than a registration of the will of the parties. National, etc., Co. v. New England, etc., Co. (C. C.) 123 Fed. 6, 436. It follows that the lower court was entirely justified in examining anew the interesting inquiry whether the Frenchman, Rostand, in or about 1896, pirated the literary work of Mr. Gross, of Chicago. On this literary question it is sufficient to say that we entirely agree with the District Court.

The order appealed from is affirmed, with costs.