WILSON et al. v. HABER BROS., Inc.

(Circuit Court of Appeals, Second Circuit.    May 25, 1921.)

No. 244.

1. **Judgment ⟨key⟩651—Consent decree interpreted as an agreement.**
A consent decree is an agreement of parties, and is to be interpreted as an agreement, and consequently a suit for infringement of design patent and copyright, resulting in a consent decree by which defendant specifically agreed that the court should declare a design and copyright "good and valid in law," estops defendant from asserting the patent and copyright to be invalid.

2. **Copyrights ⟨key⟩53—What infringement consists in.**
Infringement of a copyright consists in the copying of some substantial and material part thereof.

3. **Copyrights ⟨key⟩83—Kewpie doll held infringed.**
A copyright on a doll known as a "kewpie" *held* infringed.

4. **Patents ⟨key⟩314—Question of infringement of design patent one of fact.**
The question of determining whether or not there has been infringement of a design patent is, like every other question of infringement, an inquiry of fact.

5. **Patents ⟨key⟩328—43,680 design, for doll, held infringed.**
Design patent, No. 43,680, of a grotesque figure commonly known as a "kewpie," *held* infringed by dolls sold by defendant and called "best baby."

Appeal from the District Court of the United States for the Southern District of New York.

Bill in equity by Rose O'Neill Wilson and another against Haber Bros., Inc. From a decree awarding an injunction and accounting, defendant appeals. Affirmed.

Williams & Pritchard, of New York City (William S. Pritchard, of New York City, and Hylan R. Johns, of Rochester, N. Y., on the brief), for appellant.

D. Anthony Usina, of New York City, for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge.    Decree appealed from is based upon a supplemental bill alleging infringement of design patent 43680, issued to the plaintiff, Wilson, and also infringement of said plaintiff's copyright obtained by registration April 5, 1918, for a "work of plastic art," etc.

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The subject both of design patent and copyright is a grotesque figure now commonly sold in toy shops and elsewhere, known as a "kewpie." In the specification of the design patent this object is called a "doll," and in the copyright certificate a "figure or statuette," but the thing is the same.

The present bill is supplementary to one in which the same rights were asserted as growing out of the same patent and copyright, and that bill resulted in a consent decree, by which this defendant specifically agreed that the court should declare (as it did) that said design and copyright were "good and valid in law." That consent decree also directed that a permanent injunction issue, forbidding defendant "from infringing the rights of the plaintiffs." Subsequent to this decree defendant obtained by importation certain other dolls or figures apparently differing in detail from those originally found to infringe, and offered such imported articles for sale; hence this supplementary bill.

[1] The nature of a consent decree is sufficiently indicated in Hodgson v. Vroom (C. C. A.) 266 Fed. 467. Such decree is an agreement of parties, and is to be interpreted as an agreement; consequently defendant has agreed that both patent and copyright are valid, and it must be held to its agreement.

We express no opinion as to the propriety of copyrighting this doll, but defendant was at liberty to estop itself from contesting validity, and it has done so. Therefore both as to the copyright and the design there is no question before us but that of infringement.

[2, 3] Infringement of a copyright consists in the copying of some substantial and material part thereof. Eggers v. Sun, etc., Corp. (C. C. A.) 263 Fed. 373. It would serve no useful purpose to compare in detail the so-called statuette which plaintiff copyrighted and the doll that defendant sold; it is sufficient to say that the doll at the very least is a plain copy of a "substantial and material" part thereof. Consequently it is an infringement.

[4, 5] The proper method of investigating and declaring asserted infringement of a design patent has been much discussed at bar and in the court below; it being suggested that differing and divergent, if not incompatible, rules are to be found in our previous decisions of Ashley v. Tatum, 186 Fed. 339, certiorari denied 225 U. S. 707, 32 Sup. Ct. 839, 56 L. Ed. 1266, and Borgfeldt v. Weiss (C. C. A.) 265 Fed. 268. We discover no contradiction between these decisions, though they do afford illustrations of different methods of approaching solution of the same ultimate problem, which is, like every question of infringement, always an inquiry of fact.

Whether the problem be of validity, scope, or infringement, the prime difference between patents for other inventions and those for designs is that in the first class the inquiry is, "What will it do?" whereas in respect of design one always asks, "How does it look?" Rowe v. Blodgett & Clapp Co., 112 Fed. 61, 50 C. C. A. 120. How anything looks depends very largely on the eye of the observer; yet that observer, if a court in equity or a juryman at law, must decide by the effect upon his eye whether there has or has not been that appropria-

tion of essentials, or substantial appropriation, which constitutes infringement of any patent. For such a process it is inaccurate to speak of a rule in the sense that that word is properly used in relation to legal rights. No more can be done than to indicate the processes by which experienced observers arrive at conclusions. The matter has lately been well put in the Ninth Circuit by saying:·

●"The differences in designs, which under the patent law will avoid infringement, are differences which will attract the attention of the ordinary observer, giving such attention as the purchaser usually gives in buying articles of the kind in question, and for the purposes for which they are intended." Zidell v. Dexter (C. C. A.) 262 Fed. 145, 147.

Almost the same words were used in Ashley v. Weeks-Numan Co., 220 Fed. 899, 136 C. C. A. 465. In Ashley v. Tatum, supra, the "absence of any applied ornamentation" from the alleged infringement was held to create a difference between the articles of plaintiff and defendant "readily apparent to any one—expert or nonexpert—[so that there was] no likelihood that, whether looked at together or apart, the one could not be mistaken for the other." In other words, to the eyes of the ordinary observers one did not look like the other. As was said by A. N. Hand, J., in a subsequent action on the same patent when reissued, the changes made by the defendant Tatum were thought to have "proceeded so far that it [could not] fairly be said that Ashley's design was a substantial and easily discernible feature of the completed structure." Ashley v. Samuel C. Tatum Co. (D. C.) 240 Fed. 979, 982.

The discussion has only illustrated how differently admitted phenomena affect different minds when all are endeavoring to apply the admittedly proper measure in respect of design patents, viz. optical effect. In respect of this particular defendant's doll it is sufficient to say that there is an even stronger external resemblance between plaintiff's "kewpie" and defendant's so-called "best baby" than is exhibited by the drawings inserted in the opinion in Borgfeldt v. Weiss, supra.

Decree affirmed, with costs.