PROTEX SIGNAL CO. v. FENIGER et al.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1926.)

No. 4282.

1. Patents ⟨⟩328—1,432,872, for lens for use in stop signals to be used on rear end of automobiles, claims 2 and 3, held invalid.

Patent No. 1,432,872, for lens for use in stop signals to be used on rear end of automobiles, claims 2 and 3, *held* invalid.

2. Patents ⟨⟩328—1,432,873, claims 1, 4, 5, 7, and 9, for lens for use in stop signals to be attached to rear end of automobiles, held invalid.

Patent No. 1,432,873, claims 1, 4, 5, 7, and 9, for lens used in stop signals attached to rear end of automobiles, *held* invalid.

3. Patents ⟨⟩328—1,432,873, claims 3, 6, and 10, for lens for use in stop signals to be attached to rear end of automobiles, held valid and infringed.

Patent No. 1,432,873, claims 3, 6, and 10, for lens for use in stop signals to be attached to rear end of automobiles, *held* valid and infringed.

4. Patents ⟨⟩28—Reassembling or regrouping of familiar forms and decorations may constitute patentable design.

The reassembling or regrouping of familiar forms and decorations may constitute a patentable design.

5. Patents ⟨⟩15—Design patent may not be utilized for securing monopoly on mechanical devices, but grouping of features of mechanical patent in attractive ornamental design does not make it invalid.

A design patent may not be utilized for purpose of securing a monopoly on mechanical devices, but arrangement and grouping of features of mechanical patent in an attractive ornamental design does not make design patent invalid.

6. Patents ⟨⟩252—First patented structure is infringed by another, which resembles it so as to deceive observer sufficient to induce him to purchase it.

A design patent is infringed, where resemblance of another device is such as to deceive an observer and induce him to purchase the latter supposing it to be the former.

7. Patents ⟨⟩328—58,916 held valid and infringed.

Design patent No. 58,916 *held* valid and infringed.

Appeal from the District Court of the United States for the Eastern Division of

the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by the Protex Signal Company against Isadore F. Feniger and others, doing business as the Beacon Motor Lamp Manufacturing Company. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

An action was brought in the District Court by the Protex Signal Company against the defendants above named, doing business under the firm name and style of the Beacon Motor Lamp Manufacturing Company, for the infringement of United States letters patent No. 1,432,872 and 1,432,873 and design patent No. 58,916, granted to Oscar Kroehle, all of which patents were assigned by him to the plaintiff. The charge of infringement was limited in the District Court to claims 2 and 3 of patent No. 1,432,872 and claims 1, 3, 4, 5, 6, 7, 9, and 10 of patent 1,432,873. Both of these patents were issued to Kroehle upon the same date.

The District Court held the design patent 58,916, and all the claims in issue of patents 1,432,872 and 1,432,873, invalid for lack of novelty and invention, and claims 2 and 3 of patent 1,432,872, even if valid, not infringed. A decree was entered dismissing the bill of complaint.

The Kroehle invention covered by the two mechanical patents relates to a lens for use in stop signals to be attached to the rear end of automobiles. The design patent, No. 58,916, relates to the same subject-matter. It is claimed by Kroehle that his device is equally as effective in the daylight and sunlight as in the night season, and that, notwithstanding there were a number of stop signals in the prior patent art at the time he filed his application, none of these provided a signal equally effective in daytime as in the night, and for that reason had never met with commercial success.

The lens of the Kroehle patent is provided with a plurality of concavities or indentations upon the rear face thereof, so that each ray of light as it comes from the reflector strikes upon these concavities, whereby the light is refracted and each beam split up into a multitude of smaller beams, which extend from the front of the lens in conical or fan shape, so that the rays of light are visible upon either side, or above or below, the device at an angle of approximately 25 degrees. These indentations upon the rear surface of the lens are so distributed to provide a uniform distribution of light, visible when illuminated, with unimpaired intensity, day or night. This is claimed by Kroehle to be a new and novel feature, not found in the lens of the prior art. It is fully described in claim 10 of patent 1,432,873, which reads as follows:

"A signal lens comprising a glass plate having a front which comprises forwardly projecting light-transmitting portions forming a sign and of danger-indicating color, and also comprises a forwardly projecting light-transmitting portion extending circumferentially of said sign and of danger-indicating color, said front having substantially opaque surfaces extending between the light-transmitting portions of the front, and the back of the lens having substantially all of its portions which are behind said light-transmitting portions provided with rearwardly flaring cavities which have a depth centrally of substantially a sixteenth of an inch and a diameter of substantially one-eighth of an inch at their diametrically larger ends."

A. J. Hudson, of Cleveland, Ohio (Thurston, Kwis & Hudson, of Cleveland, Ohio, on the brief), for appellant.

Charles E. Brock, of Cleveland, Ohio (Hull, Brock & West, of Cleveland, Ohio, on the brief), for appellees.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

PER CURIAM. It is unnecessary to discuss in detail the prior patent art. It is sufficient to say that a careful consideration of all of the prior patents relating particularly to "stop signals" introduced in evidence and the testimony in reference to a large number of others of the same character, not only compels the conclusion that none of them anticipate Kroehle, but also emphasizes the fact that many competitors were endeavoring, without success, to produce an automobile signal light that would operate as effectively in the daylight as in the night. The witness Bunyon, who as late as May 14, 1918, obtained a patent upon a signal device for automobiles known as the "Tell-you-when," testified that he kept himself very well posted on all the new signals that came out; that he tried to produce a signal that would have the effect of Protex, and in that connection said: "I could not—just why, I do not know—produce a signal that had the daylight effect that Protex did."

While the familiar prism glass has long been known, yet Rowe in 1917 obtained a patent (1,241,886) for adapting this well-known prism to automobile headlights, and

Hall in 1903 obtained a patent (736,722) for adapting the same to an illuminated stationary sign. These two patents are the only ones introduced in evidence that involve the same or similar principles as the Kroehle lens.

The object of the Rowe invention was to provide a lens eight or nine inches in diameter for use in automobile headlights that would not only eliminate the dangerous, blinding glare of the headlights then in use, but would also diffuse the light upon the highway, both directly in front of and to either side of the machine. To accomplish these objects he devised a lens with recessed or indented portions inclining inwardly to a central flat portion or face. Each of these indented portions "is of the inverted shape of the frustum of a pyramid, and the flat parts form part of the flat front face of the lens." There are two and a fraction pyramid prisms in each square inch of surface. The size of the lens may be varied according to the number of these prisms that are used, but there is no suggestion that a change in the size of the prisms themselves will produce the same or a different effect. It is the claim of Rowe that a lens so constructed will eliminate the blinding glare dangerous in a headlight of this size, and diffuse the light upon the highway directly in front of and either side of the machine. No testimony has been introduced tending to prove that it will not accomplish this purpose.

Kroehle's problem was to increase this glare, which by reason of the small surface through which it penetrated would not be dangerous, but would merely aid in making the signal light as effective in the daytime as at night, and also to devise a lens that could be produced with facility and at a low cost. To accomplish these purposes he devised a lens with numerous rearwardly flaring cavities, at least 40 and preferably 70 to each square inch of area, preferably hemispherical and arranged in substantially straight and substantially parallel rows, with raised letters on the front and an outer forwardly facing annular and substantially plain surface concentric in relation to the inner face. The projecting features of the letters and outward circle are presumably for the purpose of economy in manufacture. The teaching of the Rowe patent in relation to means to soften and diffuse refracted rays of artificial light would in no wise suggest to Kroehle or any other inventor that the same principle might also be employed to intensify these rays. In fact, it would seem that the teaching of Rowe would tend to a different con-

clusion; yet there seems to be no controversy but that Kroehle has, by adaptation of the same principle, produced a lens that will operate as effectively in the daytime as at night.

Hall's invention, No. 736,722, for illuminated stationary signs, especially such as are designed to be illuminated at nighttime, approaches very much more nearly to the Kroehle idea than does Rowe. While Hall states that his sign will present a brilliant and at the same time artistic effect, both in the nighttime and during the day, it is clear that he did not contemplate the illumination of his sign by artificial light in the daytime, but rather that by reason of the sunlight in the daytime and artificial light at night, it would produce a brilliant and artistic appearance. His lens, however, is so widely different in construction from the Kroehle lens that it would not appear to be practical, either from the point of utility or economy, in an automobile stop signal. It is certain that it furnished no suggestion to Kroehle, for he never saw or heard of it prior to this suit, and it is equally certain that it furnished no suggestion whatever to the 142 inventors who were giving serious thought for many years to the mastery of this problem.

The Hall device is provided with a glass plate ($A$), with characters formed by painting over the rear surface of the plate, or by interposing any opaque or mainly opaque substance to the rear of the glass and forming the characters therein. A second plate ($B$) of transparent material is provided on its rear side with prismatic or other projections "which are adapted to transmit light through the plate $B$, and thence through the character openings. Instead of two lenses, Kroehle uses but one, and the characters upon his lens are raised letters constituting an integral part of the lens itself, thereby producing a unitary signal, simpler and cheaper in construction and more particularly adapted for use upon a moving vehicle, where multiple parts are not so easily maintained in exact relation to each other as in a stationary structure.

For the reasons stated, we do not think that Hall anticipates claims 3, 6, or 10 of Kroehle patent 1,432,873.

[1] Claims 2 and 3 of Kroehle's patent 1,432,872 are in no wise restricted in specifying which part is more and which part is less translucent. Given the broad scope which they were clearly intended to have, they involve only two things: First, contrasting degrees of translucency between the letters and the background; and, second,

protruding letters. It is conceded that the contrasting degree of translucency was old, and that it was a common thing to make glass letters protruding. Even if it were conceded that this combination had not theretofore existed, we do not think that the adding of this element of protrusion to existing sign or signal surfaces constituted invention, especially in the absence of any showing that there is any optical connection between the protruding letters and the pitted rear surface, and in this connection it may be noted that these claims do not call for such pitted surface. For the reasons stated these two claims are invalid.

[2, 3] Claims 1, 4, 5, and 7 of patent No. 1,432,873 are broad enough to include any and all forms of light-directing surface irregularities, and, so construed, are invalid. Claim 9 is also broader than the state of the art permits. Claims 3, 6, and 10 are more limited, but are broad enough to cover the full scope of Kroehle's invention. So limited, they are valid claims.

The defendant at first used the form which had closely fixed and small vertical rib lines on this interior surface. Then it adopted almost precisely plaintiff's form of surface with spherical indentations. This we think was an infringement of the valid claims in suit. Its later form, which is substantially the same as its first, does not infringe.

[4] There is nothing in the prior art that in any way anticipates the design of the Kroehle patent, No. 58,916. Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 26 L. Ed. 939; Ashley v. Weeks-Numan Co., 220 F. 899, 901, 136 C. C. A. 465. The design of this patent presents a pleasing, compact, artistic, and attractive appearance. It is said, however, that this design includes no new or novel features. If that claim were conceded, nevertheless the reassembling or regrouping of familiar forms and decorations may constitute a patentable design. Imperial Glass Co. v. A. H. Heisey & Co. (C. C. A.) 294 F. 267, 269; Zidell v. Dexter (C. C. A.) 262 F. 145, 146; Ashley et al. v. Weeks-Numan Co., supra.

It is further said that every alleged ornamental feature of the Kroehle design patent embodies a necessary mechanical function. In a measure that may be true. On the other hand, it is equally true that the lens of Kroehle will, no doubt, function equally as well in a structure wholly different in form or design.

[5] It is true that a design patent may not be utilized for the purpose of securing a monopoly on mechanical devices. North British Rubber Co., Ltd., v. Racine Rubber Tire Co. (C. C. A.) 271 F. 936, 939. Kroehle has not attempted to do this, but, on the contrary, has secured separate patents on his claimed mechanical invention, and the arrangement and grouping of the features of his mechanical patent in an attractive ornamental design does not preclude the validity of his design patent, if otherwise valid. North British Rubber Co., Ltd., v. Racine Rubber Tire Co., supra; Dietz Co. v. Burr & Starkweather Co., 243 F. 592, 594, 156 C. C. A. 290; Ashley et al. v. Weeks-Numan Co., supra, page 901 (136 C. C. A. 465). For the reasons stated, we are of the opinion that Kroehle's design patent No. 58,916 is valid. Gorham Co. v. White, 81 U. S. (14 Wall.) 511, 20 L. Ed. 731. The arrangement of colors and light effects, first devised by Kroehle and copied by defendant, is not without importance.

[6] It appears from the evidence and exhibits that the appellee has bodily adopted, not only the exact size, but also the artistic and distinctive features, of Kroehle's design No. 58,916, without any effort or apparent intent to distinguish therefrom. While there is some slight difference between the outer concentric ring of Kroehle and the appellee's structure, the difference is so unimportant that to the eye of an ordinary observer, giving such attention as a purchaser usually gives to designs, they would appear to be substantially the same. The rule is, as stated in Gorham Co. v. White, supra, that "if the resemblance is such as to deceive such an observer and sufficient to induce him to purchase one, supposing it to be the other, the one first patented is infringed by the other."

[7] Claims 3, 6, and 10 of Kroehle's patent No. 1,432,873 are valid and infringed by appellee's second form. The design patent No. 58,916 is valid, and is infringed by each form of appellee's device.

Reversed and remanded, for further proceedings in accordance with this opinion.