**FORESTEK PLATING & MFG. CO. v. KNAPP–MONARCH CO.**

No. 7872.

Circuit Court of Appeals, Sixth Circuit.

Sept. 18, 1939.

SIMONS, Circuit Judge, dissenting.

Harvey R. Hawgood, of Cleveland, Ohio, (Hawgood & Van Horn, of Cleveland, Ohio, on the brief), for appellant.

W. P. Bair, of Chicago, Ill. (Bair & Freeman, of Chicago, Ill., Mooney, Hahn, Loeser, Keough & Fulton, of Cleveland, Ohio, and Will Freeman, of Chicago, Ill., and M. A. Loeser, of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

The appellee, Knapp-Monarch Company, instituted this action against appellant, Forestek Plating & Manufacturing Company, to restrain alleged infringement of mechanical patent No. 2,040,369 issued May 12, 1936, to appellee, Knapp-Monarch Company, as assignee of William H. Fischer, patentee, and Design Patent No. 96,481 issued August 6, 1935, to appellee, assignee of Andrew S. Knapp, patentee.

Patent No. 2,040,369 relates to improvements on electric sandwich toaster grill and No. 96,481 to the improvement in its design.

All of the claims relied on by appellee to sustain infringement of each patent were held valid and infringed by the lower court.

The mechanical patent in suit is a toaster-grill consisting of three rigidly connected parts; a parallelogram tray base with peripheral upwardly and outwardly sloping flange terminating at each end into flanged handles with four depressed portions adjacent to the inside periphery of the flange serving as feet. Approximately one-half of the underneath center of the tray is pressed upwardly in parallel lines and therein is placed four slot connections with a screw in the center connecting it to the lower heating element, from which project four points fitting into the slots.

The upwardly and downwardly depressed portions of the tray and lower heating element are sufficiently spaced to permit air circulation between them and its resting place to prevent excessive heat from penetrating to the table or other furniture on which the tray rests or to its handles. Resting on and attached to the tray is the lower encased heating element and it is connected to the upper heating element by a slotted pivoted pin, the slot being adjustable so the two heating elements may form a flat continuous surface to be used as a grill or closed on any thickness of sandwich, bread or other food.

Each of the two encased heating elements has a smooth flat surface and they are connected so the electric current flows into each at equal heat with a handle in the upper heating element for opening and closing. The whole appliance can be raised to a high temperature, without transmitting excessive heat to the tray base or its resting place and may be safely moved while in operation.

The patentee points out that the object of his invention was to provide an electrical appliance of simplicity, durability and of comparatively inexpensive manufacturing cost, which could be adapted for toasting sandwiches and for grill purposes, without an objectionable amount of heat to the handles or under-surface.

A further object was to provide a tray support with formed feet and upwardly depressed portions which connected with downwardly depressed portions of an electric heating casing, the upwardly and downwardly projecting depressions contacting each other and being connected at contacting points, with air circulation beneath the support and the electric heating casing in such manner as to minimize heat.

A further object was to provide an appliance with a two-part casing, hinged together by a novel type hinge permitting the two parts to be opened for the purpose of inserting food between them or open so one point forms an extension of the other in order that two different articles of food may be cooked on each heating element at the same time. Another object was to provide a grid plate permanently secured in a casing member with a novel type of heating element, also to provide a terminal structure, which could be assembled in minimum time.

Another object was to make the heating elements free from rattling without any connecting means other than being retained between the appliance casing and the grid element when inserted in position.

Another object was to provide a receptacle for catching drippings from the grids, being so arranged that the drippings would drop therein regardless of the position of the movable casing member with reference to the stationary one.

The claims in suit are 1, 2, 3, 12, 14, 16 and 21.[1]

Appellee contends that the art of electric toasters had been baffled in its attempts to devise one of few parts with a low base and that its assignor solved this difficulty by devising, and it manufactured, an electric toaster or grid of a new com-

1. In an electrical appliance, a substantially, flat, tray-like support having a plurality of spaced apart upstanding, relatively small diameter portions of substantial height projecting from the plan thereof and serving as a support, a two-part casing, the parts thereof being hingedly connected together, electric heating elements contained in each of the two parts of said casing, the bottom part of said casing resting on said upstanding portions of said tray-like support, and being connected at the points where the bottom casing part rests upon said tray-like support for providing a substantial space for atmospheric air circulation between the major part of said bottom and the top of said tray-like support including the space among said spaced apart upstanding portions.

2. In a low mounted type of electrical appliance, a tray-like support, spaced feet for supporting said tray-like support relative to a supporting surface and a plurality of spaced apart upstanding portions formed on said tray and serving as supports, a casing, an electric heater therefor, the bottom part of said casing resting on said upstanding portions of said tray-like support and slot and tongue interconnections at the points where said bottom of said casing rests on said tray-like support for providing a substantial space for atmospheric air circulation between the major part of said bottom and the top of said tray-like support including the space among said portions.

3. In an electrical appliance, a substantially flat, tray-like supporting member having open top, depending depressions formed therein to serve as supporting feet exposed on their upper surfaces to atmospheric air circulation, an electrically heated casing member, and means for spacing the two members relative to each other and supporting the casing member on the tray-like supporting member, comprising a plurality of laterally spaced apart outstanding portions of substantial height formed on at least one of said members and projecting from the plan thereof and contacting with the other one, and means of connection at the point of contact.

12. A support for a relatively low electrical appliance comprising a single sheet of material in the form of a tray having depressed portions adjacent the periphery thereof serving as feet and means spaced inwardly from said periphery formed of said sheet material and projecting upwardly from the plan thereof to which the relatively low electrical appliance is rigidly connected and being hollow and open from below said sheet of material for positioning said appliance above and spaced from the tray permitting atmospheric circulation both below and within the hollow portion of said means and between the tray and the appliance.

14. In a relatively low type electrical appliance, a tray-like supporting member having hollow depressed portions formed therein to serve as supporting feet, said depressed portions being subjected to the circulation of air both above and below said tray-like supporting member, an electrically heated casing member and means for spacing the two members relative to each other comprising an upstanding portion formed on said tray-like supporting member and upon which said casing is positioned and means of connection between said casing member and tray-like supporting member.

16. A support for a low mounted electrically heated appliance comprising a single sheet of material permanently fastened to and forming a unitary part of said appliance, said sheet of material being bent and shaped to provide a relatively flat, tray-like element, feet for supporting it on and above a table surface and to support the appliance above the plane of the material to permit air circulation on both sides of said sheet of material to dissipate heat by conduction from the heated appliance through said material, the point of heat transfer from the appliance to said support being remote from the feet.

21. Supporting means for a low-mounted type electrical appliance comprising a single plate of material having a peripheral flange, means adjacent said flange for supporting said plate spaced above a supporting surface, a plurality of laterally spaced apart upwardly pressed portions formed on the top of said plate adjacent the center thereof and serving as supports for an electrical appliance casing or the like and providing space for atmospheric air circulation between the major part of said plate and a casing when supported thereon, including the space among said portions and also below said supporting plate between said portions and the supporting surface for the plate, and means for connecting said plate with an electrical appliance casing to provide a unitary structure.

bination with a one-piece tray-like bottom that could be assembled on the toaster casing with three operations, and that the openings on the appliance for air circulation were so devised that the transmission of heat to the tray base or its handles was restricted.

In determining the validity of the claims involved, the following legal principles are applicable: first, that the issuance of the patent is enough to show, until the contrary appears, that all of the conditions prerequisite to patentability are present and that a heavy burden rests on the assailant to show invalidity. Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983; Adamson v. Gilliland, 242 U.S. 350, 353, 37 S.Ct. 169, 61 L.Ed. 356; second, that a new combination of elements, old in themselves, but which produces a new and useful result or any diversity of arrangement of old things which introduces a new function, or a new and useful method performing the old function in a new way, support patentability, Expanded Metal Company v. Bradford, 214 U.S. 366, 381, 29 S.Ct. 652, 53 L.Ed. 1034; Webster Loom Company v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177; third, if those skilled in the mechanical arts are working in a given field and after repeated efforts fail to discover a new and useful improvement, he who first makes the discovery has done more than the skilled mechanic in the art and has achieved patentability. Temco Electric Motor Company v. Apco Manufacturing Company, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298.

A grill is one of the oldest cooking utensils known to our civilization. However, Garrett in his 1892 Encyclopedia of Cookery said, "all good grill cooks employ tongs" and the toaster is also of ancient origin. As early as 1807 Roberts, in his patent No. 3083, described a toaster that might be extended or contracted at pleasure. A tray was described as a "kitchen utensil" as early as 1639.

The advent of electricity for the operation of household appliances caused the development of the portable cooker principle in toasters, grills, casseroles, etc., and from 1933 has shown an increasing popularity. The use of a small, movable appliance permits adequate cooking with an economical expenditure of current and requires little space.

One of the problems encountered in the use of these cooking appliances was the engendering of heat destructive to tables and furniture and discomfort and sometimes injury and burning to the operator in using and moving the appliance.

There are a number of examples in the prior art of the use of movable electrical cooking appliances which leave the field of discovery exceedingly narrow. The references cited in the patent office and relied upon by appellant to show the state of the prior art and the lack of invention are: Weir, No. 1,574,141, issued February 23, 1926; Strauss, No. 1,764,908, issued June 17, 1930; Barnes, No. 1,804,196, issued May 5, 1931; Barnes, No. 1,866,674, issued July 12, 1932; Lucia, No. 1,873,898, issued August 23, 1932; Fagen, No. 1,-969,361, issued August 7, 1934; McArdle, No. 1,973,175, issued September 11, 1934; Nelson, No. 2,015,812, issued October 1, 1935.

Appellant also relies upon the following patents not cited against the application; Thornton, No. 1,161,167, issued November 23, 1915; Warner, No. 1,179,896, issued April 18, 1916; Vaughn, No. 1,-681,142, issued August 14, 1928; Wolcott, No. 1,680,402, issued August 14, 1928; Talbot, No. 1,737,620, issued December 3, 1929; Lamb, No. 1,778,263, issued October 14, 1930; Pickering, No. 1,907,441, issued May 9, 1933; Wolcott, No. 1,893,-212, issued December 4, 1934; Nelson, No. 2,015,812, issued October 1, 1935; Bolesky, No. 2,032,106, issued February 25, 1936.

Most of the devices and patents have been introduced to show the development of the prior art in relation to movable cooking appliances. Appellant relies on three as best anticipating appellee's device and as showing a lack of patentability; Barnes, 1,804,196; Pickering, 1,907,441, and Wolcott, 1,983,212. The others cited may be dismissed as not particularly germane to the inquiry and it would serve no useful purpose to discuss them. All of them in broad outline are found in the above three, and we shall confine our analysis to those.

Barnes' device is an electric, hollow base, cooking appliance with a lower heating element secured thereto, which in turn is secured to the upper heating element by a slot-hinge structure made up of an inwardly and downwardly curved member pivotally connected at its upper end to the top section. The lower heating element is fastened to a tray-like base,

much of its area being so close to it as to act as a heat conductor. This base is provided with a plurality of feet made of separate insulating material to avoid radiation from the base to the seating place. The assembly is somewhat complex.·

The patent office considered Barnes in connection with appellee's application and rejected it as anticipatory, which weakens it as a prior art reference here. Gulf Smokeless Coal Company v. Sutton, Steele & Steele Company, 4 Cir., 35 F.2d 433.

Pickering devised an electric movable utensil for cooking cakes, or the like, which comprised a pair of electrically heated hinged sections disposed side by side when in use, and superimposed on a base plate or stand. ·He placed insulating washers of fibre or other suitable material between the lower heating element and the base plate. The several parts of the appliance were held securely together by screw bolts extending through the insulating washers into the lower heating element. His genius was directed to the improvement of the upper heating element in relation to the cooking surfaces.. No special attention was given in his application or claims to the avoidance of heat radiation from the lower heating element to the base, and he did not claim a tray-like support.

Wolcott devised an electric coffee maker of the automatic, quick-cooling, vacuum type. He stated one of the objects of his invention was to provide improved and simplified support for the heating element effectively insulated against the transmission of heat to the base of the structure.

His appliance was composed of four integrated parts. At the top was a vacuum type coffee maker in a cylindrical bowl with air holes in its sides just below the rim, mounted on a cylindrical stove of smaller diameter and attached thereto and in one part, containing a heating unit formed of sheet metal with a series of air openings around it. The stove or heating element had conical depressions in its base and was seated on a tray with corresponding raised supporting portions with air circulation between. The tray was mounted on insulating feet connected thereto by rivets or screws. This assembly was complicated.

Wolcott's object was to provide a means for quick cooling of his appliance upon the cessation of current flow. His air apertures caused air to flow directly onto the heating element while in use and would tend to increase the use of current. His quick cooling of the appliance so it could be moved made its operation more expensive.

A summary of the prior art shows that nearly all of the elements in appellee's device are old. The examples of prior use in the record possess some, but not all, of the elements of the patent. There is no combination shown to have existed in the prior art or use which embraces all of appellee's.

The question of invention is not without difficulty. The differences between appellee's device and those of others seem slight, yet they are marked.

Fischer introduced into the art a low mounted type of movable electric cooking appliance with a tray support forming an integral part of the appliance and in direct contact with it so provided that the handles and base were relatively cool while the appliance was in operation. While the elements he employed were old, his manner of making them function in combination was new. Leeds & Catlin Company v.·Victor Talking Machine Company, 213 U.S. 301, 318, 29 S.Ct. 495, 53 L.Ed. 805.

The presumption of patentability is strengthened by the fact that the manufacturers discarded alleged anticipating devices and accepted that described in the patent and also by the immediate acceptance and use by the public of appellee's appliance and the displacement of earlier ones and is indicative of invention rather than mechanical skill, where, as here, the question of patentability is narrow. Electric Machinery Mfg. Co. v. General Electric Co., 2 Cir., 88 F.2d 11.

"Where the method or device satisfies an old and recognized want, invention is to be inferred, rather than the exercise of mechanical skill. For mere skill of the art would normally have been called into action by the generally known want." Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464, 474, 55 S.Ct. 449, 454, 79 L.Ed. 997.

Appellant paid its tribute to the utility of appellee's device by discontinuing the use of the now claimed anticipating appliances and adopting appellee's. Diamond Rubber Co. v. Consolidated Tire Company, 220 U.S. 428, 441, 31 S.Ct. 444, 55 L.Ed. 527.

One of the well-recognized rules in determining patentability is the utility of

a substitution. Smith & Co. v. Goodyear Dental Vulcanite Company, 93 U.S. 486, 495, 23 L.Ed. 952.

■ The substitutions and arrangements of Fischer accomplished more efficient action with the use of less current, cheaper construction and simpler assembly with both novelty and utility. Low v. McMaster, 3 Cir., 266 F. 518. Patent No. 2,040,369 is valid and infringed.

Design Patent No. 96,481 has a single claim which reads: "The ornamental design for a combined sandwich toaster and tray substantially as shown and described."

The design was for a novel combination of tray and toaster, low, compact, small, smooth and neat with embossing on the tray and the top of the toaster and on the handles, the whole structural design appealing to the eye with the upper part coming entirely down toward the base and harmonizing with it. It had the appearance of stability and long-wearing life, with a smooth curving contour, and contrasting colors of metal and black.

■ Section 4929, R.S., 35 U.S.C.A. § 73, the statute which authorizes the granting of a design patent, requires that the design to be inventive must be new, original and ornamental and R.S. § 4893, 35 U.S.C.A. § 36, requires that the invention be sufficiently useful and important before the Commissioner is required to issue a patent therefor. Every new design of an article manufactured is not patentable. It was the intent of the Congress in the adoption of the design patent law to encourage ornamentation and beautification in manufactured articles so as to increase their salability and satisfy the aesthetic sense of the purchasers.

The inventive designer need not possess the skill of a great artist or sculptor, but he must possess more skill than the professional designer, mechanical engineer or metallurgist. A true standard to furnish a rule for the settlement of all cases in advance as to the degree of ornamentation and originality required for patentability in manufactured articles is not possible. The applicability of the Statute is as broad as the varying aesthetic tastes of the buying public for new things.

■ Each design must be measured at its own particular time and in its own special field. The stream-lined train design was rejected as early as 1874, but was universally accepted in 1934. In our own time, original work has been done outside of the official province of art. Technical progress has been made in all branches and new forms have been invented in the sphere of costume and of articles of daily use of all kinds.

In handicraft, the personal touch was emphasized. The imprint of the worker and his tools was inevitable. In machine work, the impersonal prevails and if the worker leaves any tell-tale trace of his individuality in the operation, there is a flaw. The use of the machine produced a different type of designing genius. Its aesthetics required precision, calculation, flawlessness, simplicity and economy.

■ We live in an age when the great masses of population have little to spare for luxuries which has created a demand for cheaply manufactured objects of both beauty and utility, and been a stimulant to designers. In order for one to be entitled to a design patent, his creation must be the product of inventive skill, and as in mechanical patents, there must be originality and the exercise of inventive faculty. In the mechanical field, there must be novelty and utility; in designs, there must be originality and beauty. Smith v. Whitman Saddle Company, 148 U.S. 674, 679, 13 S.Ct. 768, 37 L.Ed. 606.

■ The combination of old forms to produce a new and ornamental design is not patentable unless the new design produces a new impression upon the eye.

■ The shaping of manufactured articles to well-known, standardized forms does not constitute invention even though the form of ornamentation is unknown to the art to which applied if it existed in a prior, non-analogous art. O'Reilly v. Morse, 15 How. 62, 136, 14 L.Ed. 601; Smith v. Whitman Saddle Company, supra.

■ "The design law protects a new and original design, not the thought which results in applying the design from one art to another." Walker on Patents, Vol. 1, page 53.

Applying these principles and turning to prior art and uses for our guidance, Lockwood, No. 16,191, issued August 4, 1885, designed a tray having an outer, raised rim and a bottom with continuous, concentric grooves and intervening planes, with indented surfaces resembling hammering.

Beisel, No. 34,920, issued August 13, 1901, designed a tray of an elongated body with upstanding rims and panels at points intermediate of the rim.

Barchoff, No. 71,860, issued January 18, 1927, designed a serving platter with tree-like indentations in the center with limbs extending toward the rims with a deeper indentation at one end.

Coddington, No. 88,221, issued November 8, 1932, of which appellant is assignee, designed a toaster resting on angular feet, with half-ball soles, with upper and lower heating elements, connected by a rod extending across the rear between the upper and lower plane into right angled hinged slot connections at each end and with angular goose-neck lifting handles at each end with an opening handle on the upper heating element. This appliance was angular and lacked the contour and pleasing appearance of appellee's design.

The object of the design statute is to encourage the decorative arts, and a new design, if it does no more than please the eye, is the proper subject of a design patent, regardless of utility, even though it is a reassembling or regrouping of familiar forms and decorations. Protex Signal Co. v. Feniger, 6 Cir., 11 F.2d 43; Pelouze Scale & Manufacturing Co. v. American Cutlery Company, 7 Cir., 102 F. 916; Franklin Knitting Mills, Inc., v. Gropper Knitting Mills, Inc., 2 Cir., 15 F.2d 375; Graff, Washbourne & Dunn v. Webster, 2 Cir., 195 F. 522.

A consideration of all of the prior patents placed in the record and prior uses of similar designs, compels the conclusion that none anticipated Knapp.

Appellant had been developing and placing on the market, sandwich toasters since 1929 and the fact that it abandoned its own design and adopted appellee's in all-essential particulars is persuasive evidence that Knapp made a discovery that had escaped the draftsmen skilled in the art.

The design patent, No. 96,481, is valid and infringed. The decree of the District Court is affirmed.

SIMONS, Circuit Judge (dissenting).

I regret that I am unable to concur in the conclusions reached on either the mechanical or the design patent. As to the former, the inventor but combined the old toaster with a conventional tray. It is true that these structures are rigidly connected, but together they perform no unitary or joint function any more than do the pencil and eraser in the classic case of Reckendorfer v. Faber, 92 U.S. 347, 357, 23 L.Ed. 719, the stoker and blower ran in our recent case of Detroit Stoker Co. v. Brownell, 6 Cir., 89 F.2d 422, or the highway torch and flame-guarding cap lately considered by the Supreme Court in Toledo Pressed Steel Co. v. Standard Parts, Inc., 59 S.Ct. 897, 83 L.Ed. 1334, decided May 29, 1939. In this respect the claims but describe an aggregation and not a true combination and are therefore invalid.

Nor can I perceive invention in altering the shape of the conventionally combined structure in response to a well defined popular trend in all the arts for "streamlining." We quite recently pointed out (Univis Corp. v. Rips, 6 Cir., 104 F.2d 749, 752) in respect to another art that where the possibilities for variations in shaping and positioning are innumerable not every fresh effort which results in a new shape or position can be said to amount to invention.

It is quite novel doctrine to hold that the fact that appellant has seen fit to use the device described by the patent in suit strengthens the presumption of patentability however such fact may give tribute to utility or beyond peradventure establish infringement. If it should prevail there would be few with temerity to challenge a patent however obvious its invalidity or to defend themselves or the public against an improvidently granted monopoly. The precise reverse of this is, of course, true, for one who reproduces a patented device proclaims to the world his disbelief in the validity of the patent, his purpose not to be circumscribed by it, and invites a suit for infringement so that validity may be adjudged, and the closer the reproduction the plainer is his challenge to validity.

As to the design patent, I doubt its validity. In a careful consideration of the statute in Applied Arts Corporation v. Grand Rapids Metalcraft Corp., 6 Cir., 67 F.2d 428, 431, we expressed the view that to warrant the granting of a design patent something more was required than merely conventional design made imperative by elements that are combined and the purpose of a device. I adhere to that view. Configuration responding merely to function is not of itself a contribution to the decorative arts, for as was said in Standard Computing Scale Co. v. Detroit Auto-

matic Scale Co., 6 Cir., 265 F. 281, "These designs are both for single column computing scales, and are of necessity similar in general construction."

If there be mechanical invention in combining a toaster and tray with lower specific gravity than was usual, then the general physical appearance of the device is but a necessary response to this inventive form, and a design patent for a configuration that may not be avoided but results in double patenting, for one may not conceive of this general configuration being achieved by any combination of elements other than those described. If, however, the invention of the design patent resides in its ornamentation and the more precise details of line and curve, then tested by the eye of the "ordinary observer," Gorham Mfg. Co. v. White, 14 Wall. 511, 81 U.S. 511, 530, 20 L.Ed. 731, as we understood his perceptiveness in the Applied Arts case, there is no similarity and therefore no infringement, for except as the patented and accused devices are of necessity similar in general construction, they are as dissimilar as were the scales in Standard Computing Scale Co. v. Detroit Automatic Scale Co., supra, or the cigar lighters in Applied Arts Corp. v. Metalcraft Co., supra.

I think the case should be reversed.