ASHLEY et al. v. SAMUEL C. TATUM CO.

(District Court, S. D. New York. March 8, 1917.)

No. 250.

1. PATENTS ⬅136—REISSUE—MISTAKE—RULES OF PATENT OFFICE.
   Where the rules of the Patent Office at the time the original patent for design was applied for limited the patentee to a diagrammatic drawing, and so prevented him from broadly describing his invention, it cannot be said that the patent was not issued under a mistaken belief that such a drawing gave him all the broad rights of his invention.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 198½.]

2. PATENTS ⬅144—REISSUE—MISTAKE—DECISIONS OF COMMISSIONER.
   The question of inadvertence, accident, or mistake in the application for the original patent should be left to the decision of the Commissioner of Patents, unless manifest from the record.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 215–217.]

3. PATENTS ⬅138(1)—REISSUE—LACHES—COURT PROCEEDINGS.
   A design patent contained no description of the design, but merely a diagrammatic representation thereof, as was then required by the Patent Office rules. The Circuit Court of Appeals held that such a patent covered only the design as shown, without ornamentation, and was not infringed by a design of similar shape having ornamentation thereon. Within a month after the decision, the patentee presented the matter to the Patent Office, and on the advice of that office filed in the court a petition for rehearing, and later a petition for writ of certiorari, which latter was denied 14 months after the original decision. Seven months thereafter the patentee applied for a reissue of his patent with a written description. Held, that he was not guilty of such laches, under the unusual circumstances, as would invalidate his reissue patent.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 201, 201½, 203.]

4. PATENTS ⬅138(2)—REISSUE—INTERVENING RIGHTS.
   Where defendant had, before a design patent was reissued, manufactured and sold a substantial number of articles which did not infringe complainant's original design patent, but did infringe the reissue patent, it has acquired intervening rights which prevent complainant from claiming infringement by defendant.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 202.]

5. PATENTS ⬅147—REISSUE—DESIGN PATENT—CHANGE IN PATENT OFFICE RULES.
   A reissue of a design patent, the original of which was taken out when the Patent Office rules limited the applicant to a diagrammatic description, is not open to suspicion because the claims have been broadened, as permitted by the change of rules allowing verbal description.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 220.]

6. PATENTS ⬅328—INFRINGEMENT—DESIGN PATENT—ORNAMENTATION.
   Reissue of the Ashley patent, No. 37,504, for a design for an inkstand, in which the claim covered a design consisting of a low, broad, flat base surmounted by a low dome is infringed by an inkstand having those features, though they are so ornamented as to enable a casual observer to distinguish between the two inkstands.

In Equity. Suit by Frank M. Ashley and another against the Samuel C. Tatum Company for infringement of a patent for design. Bill dismissed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

George B. Holbert, of New York City (Nathan Cohen, of New York City, of counsel), for complainants.

Wood & Wood, of New York City (William H. Wood, of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. This suit is for infringement of a reissue of a design patent for a glass inkstand. The original patent, No. 37,504, was granted to the complainant, Frank M. Ashley, August 8, 1905, and the patent was reissued December 23, 1913. Judge Learned Hand held the original patent valid and infringed by this defendant in the case of Ashley v. Tatum (C. C.) 181 Fed. 840. That decree was reversed by the Circuit Court of Appeals (186 Fed. 339, 108 C. C. A. 539), and the patent was held valid, but not infringed. The complainants' inkstand and the alleged infringing inkstand before the court in this suit are the same, or substantially the same, as those involved in the former suit. After the decision of the Circuit Court of Appeals, the complainant sought for a review by writ of certiorari, but the writ was refused, and thereafter a reissue was granted which is believed to have been the first reissue ever granted in the case of a design patent. The original patent was granted when the rules of the Patent Office did not permit a written description of a design patent, but only a diagram of the design. The original patent stated that the complainant, Frank M. Ashley had—

"invented a new, original, and ornamental design for an inkstand, of which the following is a specification, reference being had to accompanying drawing, forming part thereof. The following is a plan view of an inkstand, showing my new design. I claim the ornamental design for an inkstand as shown."

In the reissue patent, the specification sets forth that:

"The essential feature of my design consists in the general outline of the stand, which comprises a low, broad, flat base surmounted by a low dome in which a funnel shape dip cup is located. Having thus described my invention, I claim an ornamental design for an inkstand, consisting of a low, broad, flat base surmounted by a low dome and a funnel shape dip cup located within the dome, substantially as shown and described."

Judge Lacombe, writing for the Circuit Court of Appeals, in the former case of Ashley v. Tatum, supra, said:

"It may be that upon the state of the art at the date of his application complainant would have been entitled to a claim calculated to secure to him the dominant feature of his device, with or without ornamentation, unless, indeed, the ornamentation was carried to such an extent as substantially to modify the effect produced by the contour and proportions. But there is no such claim, and no written description upon which it could be based. The circumstance that both are absent, possibly solely because the Patent Office refused to allow any written description to be filed, does not give this court the power to write such a description and claim into the patent. We must construe the claim according to the rule laid down in the Dobson Case as 'covering the design as a whole, and not any part of it as a part; [testing it] as a whole—as to infringement.'

"We cannot, therefore, eliminate the element shown in the drawing, viz., the absence of any applied ornamentation. That element must be held to be as essential as any other element. In defendant's inkstand, the general contour of base and dome in the same relative proportions is found; but around the lower half of the dome there is a series of circumferentially displayed facets which effect a substantial modification of appearance of the inkstand

by suggesting the idea that it is made out of cut glass, instead of pressed glass. The difference between the two is readily apparent to any one—expert or nonexpert—and there seems no likelihood that, whether looked at together or apart, the one could be mistaken for the other. In our opinion infringement of the claim has not been made out."

It seems clear from Judge Lacombe's opinion that the Circuit Court of Appeals has held that the defendant's design was such a departure from the diagrammatic description of the complainant's design contained in the original patent that it did not infringe. Both Judge Lacombe and Judge Learned Hand held that the particular feature of complainant's invention, which was new and meritorious, was the flat, broad base of the inkstand, surmounted by a low dome, and the pleasing effect based on the simple and useful combinations. Judge Lacombe spoke of these characteristics as the "dominant" features of the design.

[1, 2] It was with a view to obtaining protection for the design of any inkstand having these dominant features, and not being limited simply to the particular inkstand in use, that the complainant sought and obtained a reissue patent. In view of the rules of the Patent Office at the time the original patent was applied for, which seem to have prevented the complainant from broadly describing his invention by means of a written description, and limited him to a diagrammatic drawing, I cannot say that the original patent was not issued under a mistake, due to the belief on the part of the patentee that a diagrammatic drawing gave him all the broad rights of his invention. The question of inadvertence, accident, or mistake, unless manifest from the record, should be left to the decision of the Commissioner of Patents. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658.

[3] I think it clear that the defendant's inkstand has the dominant features described in complainant's claim in the reissue patent, and that it infringes complainant's reissue patent, and the complainants should succeed in this suit unless they are barred by laches, or by intervening rights. Defendant's intervening rights arose out of a design patent for a so-called diamond inkstand No. 40,125, granted to S. E. Hilles, July 6, 1909—four years prior to the date of the granting of the reissue patent in suit.

Reissue patents were discussed in the case of Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783, Mr. Justice Bradley there said:

"But in reference to reissues made for the purpose of enlarging the scope of the patent, the rule of laches should be strictly applied; and no one should be relieved who has slept upon his rights, and has thus led the public to rely on the implied disclaimer involved in the terms of the original patent."

The dates which are important for consideration are the following: The Circuit Court of Appeals directed the dismissal of the bill by opinion dated March 13, 1911. Thereafter, and in the same month, the complainant communicated with his counsel and sent the latter to Washington to see what could be done in regard to the matter of a reissue. Upon the advice of the Patent Office, a petition for a rehearing was thereafter filed, which was denied in October, 1911. Work was then commenced on a petition for a writ of certiorari, which was presented in March, 1912, and denied in May, 1912. The application for a reissue was not filed until January, 1913.

The prosecution by the complainant, Ashley, of his applications for a rehearing, a writ of certiorari, and a reissue patent was not very expeditious, but the situation was difficult and unprecedented. The practice of the Patent Office not to allow written descriptions in the case of design patents was apparently disapproved of by the Circuit Court of Appeals, and the customs and legal theories of many of the patent profession were disturbed. Under these circumstances, the trial of every expedient, and a protracted consideration, were unusually justified. The reissue patent should not, under such circumstances, be held invalid for laches.

[4] Ever since the issue of its patent for the diamond inkstand granted July 6, 1909, the defendant has done a business in the manufacture and sale of these inkstands which I have held infringed complainant's reissue patent. This business appears to have been larger in the first two or three years after the issue of the Hilles patent than it has been since. While, therefore, the defendant may not have manufactured or sold large quantities of its inkstands, it is nevertheless an incontrovertible fact that it has manufactured and sold under the Hilles patent a substantial number of inkstands, and that neither the patent nor the inkstand infringed Ashley's original patent according to the construction placed thereon by the Circuit Court of Appeals. I can feel no doubt that a business of some importance has been built up by the defendant between the dates of the granting of the original patent and of the reissue, and that consequently intervening rights have arisen within the legal acceptation of the term. Under these circumstances, complainants cannot be allowed to claim "infringement by this particular defendant in continuing the manufacture and sale which it entered upon while the   *   *   *   [original patent] was the only public announcement of complainant's alleged monopoly." See Autopiano Co. v. American Player Action Co., 222 Fed. 282, 138 C. C. A. 38.

[5, 6] A reissue of a design patent, the original of which was taken out at a time when the rules of the Patent Office limited the applicant to a diagrammatic description, is not open to suspicion because the claims cover the dominant features and are not limited to a verbal description of nothing more than the exact diagrammatic drawing shown in the specification of the original patent—in other words, because the claims have been broadened. The defendant's inkstand is undoubtedly within the claims of the reissue patent and contains all the dominant features of the Ashley design. It is not enough for defendant, while using this design as a basis, to superimpose ornamentation thereon, even though the ornamentation is sufficient to make defendant's inkstand readily distinguishable by the casual observer from complainants. The changes made by the defendant must have proceeded so far that it cannot fairly be said that Ashley's design is a substantial and easily discernible feature of the completed structure. Such is not, I think, the case here.

While, therefore, the reissue patent is valid and infringed, this suit cannot be maintained against this particular defendant, because of its intervening rights, and the bill must be dismissed, with costs.