## HARMAN v. SCOTT.
### Civ. No. 930.

United States District Court,
S. D. Ohio, E. D.
May 1, 1950.

Warren H. F. Schmieding and Carl Tangeman, Columbus, Ohio, for plaintiff.

Jack A. Schley and Joseph H. Schley, Dallas, Tex., for defendant.

NEVIN, Chief Judge.

This is a suit for alleged infringement of letters patent No. 2,142,896 issued January 3, 1939, to plaintiff herein, Hal W. Harman. In his complaint as originally filed, plaintiff alleged infringement of two additional patents. These two patents (Nos. 2,011,484 (Ex. 1) and 2,198,167, (Ex. 3), both to Harman and both "Method" patents) were later withdrawn from the case.

Plaintiff prays for an "injunction against further infringement"; "an accounting for profits and damages" and for his costs.

Defendant challenges the validity of the patent and denies infringement. He prays that he "be hence dismissed" with his "costs and reasonable attorney's fees".

The patent in suit (Ex. 2) and the only one here under consideration (and which it was agreed in the record should be referred to as the "896" patent) is for a "Fastening". It is directed to an improvement in fasteners, or what is known in the trade as Locks. It is asserted that the alleged invention of the patent is particularly useful in the repairing of broken castings.

The patent contains six claims. Of these, however, only Claims 1 and 2 are here in issue. Title to the 896 patent, it is stipulated by the parties, is in plaintiff.

## I. VALIDITY

Defendant, in his answer, asserts invalidity upon several grounds, among others (1) that the alleged invention described in Claims 1 and 2 of the patent does not constitute patentable subject matter, "but is nothing more than the ordinary skill * * * of persons skilled in the art"; (2) that the claims are ambiguous, indefinite and uncertain and that the patentee "failed to comply with Section 4888, R.S. [35 U.S.C.A. § 33]" and (3) that "so far as can be ascertained from the relationship of the disclosure and Claims 1 and 2 of Letters Patent No. 2,142,896 to the construction of defendant's device, said letters patent is invalid and void for the reason that it is anticipated or specifically restricted by" certain prior patents which are thereupon listed by name, number and date.

Among the "prior patents" so listed are:

| Name | Number | | Date |
|------|--------|--|------|
| Meldrum | (Ex. P1) | 1,742,044 | December 31, 1929 |
| Buckner | (Ex. P2) | 154,580 | September 1, 1874 |
| Pierce | (Ex. P3) | 1,802,829 | April 28, 1931 |
| Richardson | (Ex. P4) | 793,958 | July 4, 1905 |
| Williams | (Ex. P5) | 1,201,008 | October 10, 1916 |
| Harman | (Ex. 1) | 2,011,484 | August 13, 1935 |

488

The foregoing "prior patents" were particularly relied upon by defendant. As to this, the record (pp. 392 and 410) shows:

"The Court: * * * Are counsel able to stipulate as to any one or more of these patents which you think is the one that is most like or comes closest to the Harman patent?

"Mr. Jack Schley (of counsel for defendant): Well, your Honor, they show different phases of the invention and that will be clearly brought out in the brief, if there is a brief.

"The Court: Is it your position that there is no one of them is particularly—you could point out particularly as being more like—nearest to an anticipation of the Harman patent?

"Mr. Jack Schley: Well, yes. I think I could point out, I could select some of them as probably being more pertinent than others.

"The Court: Which would they be? * * *

"Mr. Jack Schley: Your Honor, we were asked to specify certain patents out of the number and we will designate as most important Exhibit P-5, Williams, 1,201,008, and P-1, Meldrum, 1,742,044, and P-2, Buckner, 154,580, and P-3, Pierce, 1,802,-829, and P-4, Richardson, 793,958, and Harman patent 2,011,484, which is Exhibit 1".

In their brief and in oral argument, counsel for defendant call attention also to patent to Roberts No. 1,446,274, February 20, 1923, (Ex. P-12) and patent to Cordes, No. 1,165,155, December 21, 1915. (Ex. L)

In their oral argument and brief counsel for defendant now argue concerning the Cordes patent (No. 1,165,155) to some extent at least, as if it were to be here considered as an Anticipation. In their brief (p. 13) they set forth a "Summary of the Cordes Patent" and on p. 15 say "Aside from the Cordes patent a number of prior patents * * * are relied upon."

The fact is, however, that this Cordes patent (Ex. L) was not among those listed by defendant in his answer as an anticipation. It was introduced in evidence merely for the purpose of showing the state of the art. As to this, the record (p. 363)

shows: "Mr. Jack Schley: And I will offer this (Cordes) patent, (Ex. L) in evidence as illustrating the state of the art.

"The Court: It isn't one of the patents named in the answer.

"Mr. Jack Schley: No, sir.

"The Court: It is offered merely for the purpose of showing the state of the art, not as an anticipation, as I understand it.

"Mr. Jack Schley: No, not as an anticipation".

■ Some of the alleged "prior patents" which defendant relies on, namely Harman, (Ex. 1) Meldrum, (Ex. P1), Pierce (Ex. P3) and Roberts (Ex. P12) were before the Patent Office when Harman secured Claims 1 and 2 here in issue. (File Wrapper Ex. C). It has been many times held that an alleged prior art patent is weakened as an anticipation when it is overcome by the patentee in the Patent Office when he secured the alleged infringed claims. In McKay Co. v. Schott Mfg. Co., D.C., 25 F.Supp. 716, at page 719 this Court stated that "It (the File Wrapper) further shows that after various revisions of the claims and arguments to the Patent Office, the McGowen patent (with the four claims in suit) was granted notwithstanding the existence of these prior art patents. The presumption of invention which attaches to a patent was thus in this instance increased and the grounds for invalidating the patent must be correspondingly greater. Gray v. Eastman Kodak Co. et al., 3 Cir., 67 F.2d 190, 195; Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 71 F.2d 539, 560."

In Forestek Plating and Mfg. Co. v. Knapp-Monarch Co., 106 F.2d 554, the Court of Appeals of this (6th) Circuit at page 558, say: "The patent office considered Barnes in connection with appellee's application and rejected it as anticipatory, which weakens it as a prior art reference here. Gulf Smokeless Coal Co. v. Sutton, Steele & Steele Co., 4 Cir., 35 F.2d 433".

■ Further reference in more detail to the "prior art patents" referred to and relied upon by defendant is made by the Court in its findings of fact, which, together with its conclusions of law are set out herein as an integral part of this deci-

sion. It is sufficient here to state that the Court is of the opinion and so finds that plaintiff's patent is not "anticipated or specifically restricted" by the alleged "prior art patents".

The two claims here in issue read as follows: "1. An improved locking fastener comprising a body of substantially thin metal composed of bulged and connected restricted portions, said bulged portions being expansible by pressure, in combination with two separated parts of stock across which is drilled an opening substantially conforming in size and shape to said fastener, and into which opening said fastener is inserted and compressed. 2. An improved locking fastener comprising a body of substantially thin metal composed of bulged and connected restricted portions, said bulged portions being expansible by pressure and adapted to be flattened out to increase the overall dimensions of the bulged and restricted portions, in combination with two separate parts of stock across which is drilled an opening slightly larger than the fastener and into which the fastener is inserted and expanded".

It is recited in the patent that "The present invention relates to improvements in fastenings * * * and has for an object to provide an improved fastening for joining two pieces of metal, or for joining the two separated parts of a piece of metal across a crack, including the steps * * * by which an effective locking of the two parts of the metal is secured without the use of heat".

■ That castings are subject to cracking is shown by the proof in the case and is, as well, a matter of common knowledge. Before Harman, there were several processes of repair used. One common process was by welding. Another was a "shrink link". In either process heat was used and sometimes it became necessary to build an oven around the casting where a large casting was involved, in order to heat the casting slowly. If there was an uneven expansion, the casting was liable to crack some place else. It was necessary, when so heated, to let the casting then cool slowly. This was sometimes very expensive and not always practicable or even possible, if, for

example, the machinery of which the casting was a part, was located out in an oil field or some other remote place.

The record shows that there was a great need, therefore, for something that would eliminate the tearing down of machinery, which often resulted in incapacitating it for considerable periods of time.

That plaintiff's invention met this need is illustrated by the testimony of the witness Stembridge (among others). Mr. Stembridge was foreman of the shop in the El Paso Electric Company, which operated the city buses. He testified (Ex. 53, P4) as follows: "A. Well we had several blocks there, motors, and different parts of motors where there would a crack come in it, and ordinarily we had been taking the motor completely out of the car, stripping it down, having to pre-heat the block and hold it at that heat while the weld was being done, and that made it necessary to tie up the car for several days, and at that time, the same as now, we were trying to keep the equipment rolling, keep it in service and not tie it up any longer than possible, and on some of these cracks we had Mr. Harman to repair them by his process which took about three or four hours; * * * That was the main reason that I had the kind of work done that he was doing."

■ Evidence of commercial success may be considered as bearing on the question of invention. Temco Electric Motor Co. v. Apco Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298. The patent itself is prima facie evidence of its utility. Cleveland Automatic Mach. Co. v. National Acme Co., 6 Cir., 52 F.2d 769, 770. The presumption is that the patent is valid. The burden of proving invalidity is upon defendant. "The issuance of the patent is enough to show, until the contrary appears, that all of the conditions prerequisite to patentability are present and that a heavy burden rests on the assailant to show invalidity". Forestek Plating & Mfg. Co., supra.

■ The fact (if it be a fact) that various elements of the patented invention may be found in the prior art does not itself render the patent invalid. Frey v.

Marvel Auto Supply Co., 6 Cir., 236 F. 916.

Where, as in the patent in suit, there is a novel combination which produces a new and useful result a patent is not anticipated by piecemeal selection of the component parts of the combination from a number of prior art patents which themselves *did not solve the problem.* Parks v. Booth, 102 U.S. 96, 104, 26 L.Ed. 54. Metropolitan Device Corp. v. Cleveland Electric Illuminating Co., 6 Cir., 36 F. 2d 477, 479.

In the Forestek Plating and Manufacturing Co., case, supra, 106 F.2d at page 557, the court sets forth certain legal principles which it states are applicable "in determining the validity of the claims involved". Those same "legal principles" are applicable in determining the validity of Claims 1 and 2 presently in issue of the patent in suit. Without here quoting the "legal principles" set forth in the Forestek case the court adopts and has followed them as a guide in arriving at its conclusion on the question of validity, in the instant case.

The Court is of the opinion and so finds that defendant has failed to sustain the burden which rests upon him or to establish the allegations of his answer to the effect that Claims 1 and 2 of the patent in suit are invalid.

The Court is of the opinion and so finds that the claims here in issue are each and both valid in law, and as no one prior to the plaintiff patentee had conceived of a combination which would give the patentee's result, that the patent in suit if not indeed a basic one, at least is one of high rank.

## II. INFRINGEMENT

The record shows that plaintiff had a small shop in El Paso, Texas, where he practiced the sealing of cracks in broken castings for a number of years by what is known as the lacing process. He had several agents in the field assisting him, one of whom was the defendant, Mr. Scott.

Defendant Scott while he was employed by plaintiff had certain territories in which he acted as plaintiff's agent and in which he had the right to license others to do the work. Occasionally defendant came to the El Paso shop where plaintiff Harman was using his new lock. At the time plaintiff was using his invention defendant saw plaintiff demonstrate it.

Plaintiff devised the lock or "fastening" described in the patent in suit in the latter part of 1936, or early in 1937. Defendant was in the employ of plaintiff at that time. As to these matters, the record (p. 59, et seq.) shows the following:

"Q. (By Mr. Schmieding, of counsel for Plaintiff) do you know when you became associated with Mr. Harman. A. In the latter part of 1935 the best I can remember.

"Q. How long were you associated with him? A. Until the summer of 1937. * * *

"Q. Do you recall seeing the Harman lock at the El Paso shop, at the Harman shop— A. I did, yes, sir.

"Q. —before you severed your connection with Mr. Harman? A. I did, yes, sir. * * *

"Q. Was Mr. Harman using the locks at the time that you went with him in 1935? A. No, sir.

"Q. And when did you first see the Harman lock? A. The spring of 1937.

"Q. And you saw that at El Paso? A. Yes, sir. * * *

"Q. And you first learned of that being used as a lock through Mr. Harman? A. That is correct".

Plaintiff and defendant terminated their relationship sometime in July or the first part of August, 1937. There is some dispute in the testimony as to the exact date of this termination, as well as to the manner in which it was brought about; that is, whether Mr. Scott was "discharged" or whether he "resigned".

The application for the patent in suit was filed August 7, 1937. Subsequently a patent (No. 2,195,741) was issued (April 2, 1940) to (defendant) Scott, (Ex. K) for "Method of repairing cracked metallic castings" on application filed June 30, 1938.

Mr. Scott testified (Rec. p. 353) that he followed this method "in using Metalocks such as Exhibits 4, 5, 10 and 11" and (Rec.

p. 361) that this patent (No. 2,195,741) also involves his "lock" or (as stated by his counsel) "it illustrates his lock in the drawing".

■ Although these matters are to some extent stressed by counsel in both their briefs and oral argument, they are, in the view of the Court, relatively unimportant. As stated by the Court in Eastman Oil Well Co. v. Sperry-Sun Well Co., 5 Cir., 131 F.2d 884, at page 887: "We will not undertake to determine this (the conduct of the respective parties towards each other) for we think it wholly unimportant. If what the defendant is doing infringes, plaintiff should have its decree no matter whether defendant thought it up independently or got the idea from plaintiff's patent. If, on the other hand, what it does does not infringe, the fact that a knowledge of plaintiff's patent started defendant on the search for a device of its own will not entitle plaintiff to a decree. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298".

Defendant's alleged infringing fastenings or devices are exemplified by Exhibits 4, 5, 10 and 11. It is conceded by defendant that he "made and sold locks or fasteners such as Exhibits 4, 5, 6, 7, 10, 11, A and Q".

Defendant in his brief (p. 34) asserts that "Defendant does not make, sell or use a lock or fastener comprising a body of substantially thin metal and for this reason does not infringe claims 1 and 2 of the Harman patent 896. The term 'bulged' must be considered in the light of the specification. The term is truly applied in the claims because the specification describes the bulges as concavo-convex or cup-shaped. A piece of thin metal is bulged. Defendant has no bulged portions".

Defendant urges that his locks are thicker than those shown in the patent in suit and that they do not include "bulged portions" or if so "then the same must be said of Fig. 10 of Roberts patent (Ex. P-12) first form on left-hand side; also of Cordes, Buckner and others".

During the trial there was, and in their briefs and arguments, counsel have continued a somewhat extended discussion with respect to a definition of the term "substantially thin metal".

Plaintiff submits that a definition of "substantially thin" is found in the patent; that there is nothing vague or indefinite about the words "substantially thin" when the four corners of the patent are taken into consideration; that "any lock must be substantially thin with respect to the depth of the stock being repaired".

Defendant, on the other hand, asserts that "counsel (for plaintiff) adroitly attempts to define 'substantially thin metal' in the claims in suit by the use of a term from a claim (Claim 6) not in suit"; that "Claim 6 was inserted by amendment in July, 1938", and that "since this claim and the attempted definition were not included in the original application, the obvious meaning of thin metal as used in the original disclosure cannot be altered by amendment". Defendant submits that "each claim must stand or fall as itself sufficiently defining invention independently of the others. Carlton v. Bokee, 17 Wall. 463, 472 [21 L.Ed. 517]."

"Thick" or "thin" are relative terms. It is obvious that the locks or fasteners referred to in the patent in suit are required to be of such thickness or thinness as that they can be effectively spread laterally one at a time by hammering on them so that the entire thickness or depth of the lock is in binding relation with the metal of the side walls of the recess. There would seem to be no doubt but what one skilled in the art would readily understand and know what is meant by the term "substantially thin metal" as used in the claims in issue of the 896 patent.

Defendant in his brief (p. 1) correctly states that "Harman Patent 896 is for a locking fastening and nothing else because a patent is defined by its claims which are its four corners; * * * anything beyond Claims 1 and 2 of patent 896 is not involved in this litigation; nor can any of Harman's collateral inventions or patents be relied upon to support the charge of infringement of said claims".

As defendant points out strictly speaking, an infringement of a patent is an erroneous

phrase; what is infringed is the claims of the patent which measure the invention and define precisely what the invention is.

 It is true also that "the invention, of course, must be described and the mode of putting it to practical use, but the claims measure the invention. They may be explained and illustrated by the description. They cannot be enlarged by it". Paper Bag patent case, (Continental Paper Bag Co. v. Eastern Paper Bag Co.) 210 U. S. 405, 419, 28 S.Ct. 748, 751, 52 L.Ed. 1122. However, the specifications and drawings of a patent may be referred to as an aid in construing a claim and a claim in a patent should be construed liberally so as to uphold and not destroy the right of the inventor. Temco Co. v. Apco Co., supra.

Plaintiff states (R. Br. p. 3) that he "has never maintained that some of defendant's locks are not thicker than those plaintiff uses in the field. It may be that all locks used by defendant are thicker than those used by plaintiff" but that "in comparing those locks we can say one is thicker than the other only because we are comparing two thicknesses" and plaintiff submits that under any circumstances there "is a clear case of equivalency in the Harman and defendant's lock" and that the personnel of the Philadelphia Navy Yard as evidenced by the Navy Manual (Ex. 12) considered the Harman and Scott lock equivalent, even though the locks manufactured by defendant and described in the Navy Manual are thicker than those manufactured by plaintiff and described in the Manual.

The evidence adduced by way of oral testimony and the exhibits in this case clearly establishes that the plaintiff patentee was the first to conceive the invention defined by the claims here in issue of the patent in suit, in which a multiple lobe lock substantially thin with respect to the depth of the recess was "compressed" or "expanded" in the recess to lock the two separate pieces of stock together. It further shows that that is what defendant does.

 The Court is of the opinion and so finds that defendant's accused device (or devices) does the same work in substantially the same way and accomplishes substantially the same result as the device or "Fastening" of the patent in suit and that therefore, it (or they) does infringe Claims 1 and 2 here in issue, of Patent No. 2,142,896.

In Cleveland Automatic Mach. Co. v. National Acme Co., supra, 52 F.2d at page 772 the Court say "Appellant's device does the same work in substantially the same way, and accomplishes substantially the same result as the machine in the Trobeck patent, and this is infringement. Gordon Form Lathe Co. v. Walcott Mach. Co., 6 Cir., 32 F. 2d 55, 61".

## III.

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the Court has arrived at the following:

### Findings of Fact

1. This is an action for infringement of claims 1 and 2 of Letters Patent No. 2,142,896, granting April 3, 1939, to Hal W. Harman. The original bill of complaint also charged infringement of Harman patents No. 2,011,484 and No. 2,198,167. These two latter patents were later withdrawn.

2. The Court has jurisdiction of the subject matter and of the parties to the action.

3. Plaintiff is the patentee, has title to the patent in suit and has the right to bring this action for infringement.

4. Defendant Lawrence B. Scott, at the time of the filing of the complaint herein, was doing business in repairing castings under his own name and was a party to the business conducted under the name "Metalock Company" and "Metalock Casting Repair Service", the latter being a licensee of defendant.

5. Defendant has licensees throughout the United States who repair castings and in such repairs use locks under the trade name "Metalock", which locks are all manufactured in Columbus, Ohio, by Metalock Casting Repair Service.

6. Defendant and his licensees are now in the business of repairing cracked cast-

ings using the metal lock known to the trade as "Metalock".

7. Defendant made and sold locks or fasteners such as Exhibits 4, 5, 6, 7, 10, 11, A and Q.

8. The patent in suit is directed to a product for repairing castings or for joining two pieces of metal stock. It includes a metal "Fastening" or lock having lobes, or enlarged or bulged portions connected by restricted portions. The other elements include two separated parts of stock which may be the parts on opposite sides of the crack in a casting. An opening is drilled in the pieces of stock across the fissure substantially conforming in size and shape to the lobe type lock. The shoulders on the lobes of the lock abut the complementary shoulders in the drilled recess. The lock is formed of ductile material and is hammer drawn cold in the opening to compress and expand the same whereby to seal the side walls of the lock including the complementary shoulders of the lock with those of the opening to hold the lock in position and prevent relative movement between the joint parts of stock.

9. The fastening or lock must have sufficient thickness or depth so that after it is compressed or hammer drawn cold, it will not tear due to strains placed upon it and must be thin enough so that it can be compressed and thereby expanded transversely by hammer blows so that the shoulders on the lobes intimately engage the shoulders of the design recess.

10. There must be intimate contact of the shoulders of the lobe and the complementary shoulders of the recess throughout the depth of the lock so that the spreading strains are uniform throughout the width or depth of the lock since it is desirable to restore the tensile strength at the fissure in the casting. The depth to which the lock can be compressed and expanded, by hammer blows, is limited. Therefore, if the casting, to be repaired, is thicker than the practical depth of expansion of the lock by hammer blows, a plurality of locks are each expanded by compression in laminated form in the recess whereby each of the shoulders of each of the locks is expanded, throughout the depth thereof, into intimate metallic contact with the respective complementary shoulders of the recess.

11. The invention described in the patent in suit (No. 2,142,896) and claims 1 and 2 thereof here in issue constitutes patentable subject-matter. It is more than and beyond the ordinary and expected mechanical or engineering skill of persons skilled in the art to which the invention relates.

12. Plaintiff's invention answered a need. It met with success. Plaintiff has licensees throughout the United States who make his product using the fastenings or locks that he manufactures. Prior to plaintiff's invention, one of the best known methods of repairing castings was by welding. However, by the welding process, often a great deal of time was required to complete a repair which, by use of the present invention, can be accomplished in a matter of hours or a relatively short time. Sometimes welding also caused warping of the casting with the consequent necessity of remachining. This is obviated by plaintiff's invention. Welding was impractical for certain cracked castings.

13. Prior to and at the time plaintiff made the invention of the patent in suit he was operating under his lacing patent No. 2,011,484, and had licensees who were practicing under that patent.

14. From the latter part of 1935 until sometime in the summer of 1937, during the time referred to in Finding No. 13, Defendant Scott was employed by plaintiff as a solicitor for obtaining licensees under patent No. 2,011,484 (Ex. 1) and an instructor in the use of the method described in that patent.

15. Meldrum patent No. 1,742,044 (Ex. P1) is for a "Vehicle Wheel". The fastener in the Meldrum patent is in the form of a hollow rivet using the expansible plug principle for spreading one end of the rivet. The expansible plug may be either separate or integral with the rivet. There is no suggestion in this patent of joining two pieces of metal by a lock which is disposed in an opening extending across the fissure of the two pieces of metal.

16. Buckner patent No. 154,580 (Ex. P2) is for "Improvement in Joint-Holders". It relates to "a metallic band * * * for binding the joints of boards together". The band is used for joining two pieces of wood by a joint-holder and this joint-holder is held entirely in place by screws or nails and these screws or nails extend through the holder into the wood.

17. Pierce patent No. 1,802,829 (Ex. P3) is for a "Fastening device". It is directed to a hardened, resilient link which is snapped into position to hold two pieces of stock together through the inherent resiliency of the link. There is no suggestion in this patent of compressing or expanding a fastening or lock in an opening.

18. The patent to Richardson, No. 793,-958 (Ex. P4) is for a "Method of Making Brazed Joints". It shows a lock which is welded in position as distinguished from being cold drawn and compressed or expanded in the openings.

19. Williams patent No. 2,201,008 (Ex. 5) is for a "Metal Fastener". It is directed to the use of strips of metal which are driven edgewise into wood to bind the parts together or to hold the wood itself against splits or chips. The strips are driven into the wood in the same fashion that a nail would be, that is, there is no preformed recess for receiving the strip, nor is the strip compressed so that it may be expanded.

20. Harman patent No. 2,011,484 (Ex. 1) is for a "Method for repairing castings". It is not directed to a locking device but merely to a lacing device for filling a crack.

21. Roberts patent No. 1,446,274 (Ex. P-12) is for a "Ship's hull and other iron or steel vessel or container". It shows a fastener which is welded in position.

22. The patents referred to in Findings Nos. 15 to 21 inclusive, were among those listed by defendant in his answer as "prior patents" which "anticipated or specifically restricted" the patent in suit. These patents were selected by defendant (at the trial) "as probably being more pertinent than others".

23. Of the patents referred to in Findings Nos. 15 to 21 inclusive, the patents to Harman (Ex. 1), Meldrum (Ex. P1), Pierce (Ex. P3) and Roberts (Ex. P12) were cited by the Patent Office against the patent in suit when plaintiff secured claims 1 and 2 here in issue.

24. None of the patents referred to in Findings Nos. 15 to 21 inclusive, anticipate or specifically restrict Claims 1 and 2 of the patent in suit, nor do any of the other patents plead as anticipations by defendant in his answer.

25. No useful purpose would be served by a detailed reference to the patents plead by defendant as anticipations other than those referred to in Findings Nos. 15 to 21 inclusive, in view of defendant's statement as disclosed in Finding No. 22.

26. Cordes patent No. 1,165,155 (Ex. L) is for a "Joint-Anchor". It was not plead by defendant as an anticipation nor was it offered or admitted in evidence as such. It was offered by defendant and admitted in evidence "solely as illustrating the state of the art".

27. Plaintiff was the original and first inventor of the invention of the patent in suit, as defined by claims 1 and 2 here in issue. Claims 1 and 2 are directed to a new combination of elements which produce a new and useful result and is not present or suggested in any of the prior art relied upon by defendant.

28. Defendant's fastenings or devices as exemplified by Exhibits 4, 5, 10 and 11 perform the same work in substantially the same way and accomplish substantially the same result as the device or "Fastening" of the patent in suit.

29. Defendant makes, uses and sells a locking fastener in violation of claims 1 and 2 of patent in suit No. 2,142,896 and thereby infringes that patent.

### Conclusions of Law

1. Patent No. 2,142,896 insofar as relates to claims 1 and 2, is valid.

2. Defendant's finished products embodying any of Exhibits 4, 5, 10 or 11, incorporate the invention of patent in suit No. 2,142,896 and constitute an infringement of claims 1 and 2 of that patent.

3. Plaintiff is entitled, as prayed for, to an injunction against further infringement by defendant and those controlled by defendant; an accounting of profits and damages, and to his costs herein expended.

Counsel may prepare and submit a decree accordingly.